UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-21595-CIV-ALTONAGA/REID

RODNEY LAMAR NELSON,

    Movant,
v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

## REPORT OF MAGISTRATE JUDGE

This matter is before the court on Rodney Nelson's Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 ("Motion") [CV ECF No. 1][1]. Chief Judge Cecilia M. Altonaga referred the Motion to me for an evidentiary hearing on Nelson's claim that he was denied effective assistance of counsel by his counsel's failure to file a notice of appeal and a report and recommendation on the same. [CV ECF No. 10]. For the reasons discussed below, I recommend that Nelson's Motion to Vacate be **GRANTED** as to his claim of ineffective assistance of counsel for failure to file a notice of appeal.

### I.    Factual and Procedural Background

In February 2021, a federal grand jury in the Southern District of Florida returned an indictment charging Nelson with conspiracy to possess with intent to distribute narcotics in violation of 21 U.S.C. § 846 and multiple instances of possession with intent to distribute narcotics in violation of 21 U.S.C. § 841. [CR ECF No. 3]. Law enforcement arrested Nelson on March 16,

---

[1] Citations to [CV ECF] refer to docket entries in this civil case, Case No. 22-CV-21595-ALTONAGA. Citations to [CR ECF] refer to docket entries in Movant's underlying criminal case, Case No. 21-CR-20118-ALTONAGA-1.

1

2021, and searched his apartment pursuant to a search warrant. During the search, law enforcement found three firearms. [PSI ¶ 16]; [CR ECF No. 97 at 4]. Law enforcement also found cocaine, marijuana, and drug paraphernalia in various locations within the apartment. [PSI ¶ 17].

The grand jury returned a superseding indictment adding additional charges against Nelson for the items found during the search: possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841 (Count 11); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 12; and possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 13). [CR ECF No. 55]. As to the felon-in-possession count, the superseding indictment alleged that Nelson "did knowingly possess a firearm and ammunition in and affecting interstate commerce, knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2)." [*Id.* at 9]. Nelson was arraigned on the superseding indictment on July 6, 2021. [CR ECF No. 67].

Change of Plea Hearing

On August 12, 2021, Nelson pled guilty to Count 1 of the superseding indictment, which charged his involvement in the overall narcotics conspiracy, and Counts 11 and 13. [CR ECF Nos. 95–97]. Nelson entered his plea pursuant to a written plea agreement and an agreed-upon factual proffer. [CR ECF Nos. 96; 97]. Significantly, the agreement provided that as to Count 13, the felon-in-possession charge, Nelson understood and agreed that he qualified for the sentencing enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. §924(e). The ACCA imposes a 15-year mandatory-minimum sentence on defendants who violate § 922(g) and have three prior convictions for "a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1).

> Nelson's plea agreement specified:
>
> The Defendant further understands and agrees that as to Count 13, he qualifies for the sentencing enhancement set forth in 18 U.S.C. § 924(e) and will not challenge the application of this enhancement to him. The Defendant agrees that three felony convictions that subject the Defendant to this enhancement are: F0135540 (possession with intent to sell or deliver cocaine within 1000 feet of a school; F0203021 (trafficking in cocaine); and F105949A (attempted murder), all in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. **Accordingly, as to Count 13, the Defendant understands and acknowledges that the Court must impose a statutory minimum term of imprisonment of fifteen (15) years**, and may impose a statutory maximum term of imprisonment of life, followed by a term of supervised release of up to five (5) years, and may impose a maximum fine of $250,000. In addition to any terms of imprisonment and supervised release, and any fine, the Court may order forfeiture and restitution as to Count 13.

[CR ECF No. 96 at ¶ 5] (emphasis added). Regarding his right to appeal the sentence, the plea agreement stated:

> The Defendant is aware that Title 28, United States Code, Section 1291 and Title 18, United States Code, Section 3742 afford the Defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, **the Defendant hereby waives al1 rights conferred by Sections 1291 and 3742 to appeal any sentence imposed**, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guidelines range that the Court establishes at sentencing.

[*Id.* at ¶ 13] (emphasis added).

<u>Sentencing Hearing</u>

At sentencing, the Government asked the Court to impose the mandatory minimum of 180 months or 15 years' imprisonment. [CR ECF No. 136 at 4]. Nelson's trial counsel, Arnaldo J. Suri, stated he had no objections and asked the Court to sentence Nelson at the bottom of the guideline range. [*Id.* at 6]. The Court then heard from Nelson. [*Id.* at 10]. Nelson stated he "was here to accept [his] plea" but objected to the application of the ACCA sentencing enhancement because of his belief that neither F0203021 or F105949A qualified as predicate offenses under ACCA. [*Id.*

3

at 10–12]. Nelson premised his objections on arguments that F0203021 was a conviction for drug possession and not delivery, and that in F105949A, he was convicted as a principal under Florida law and did not fire the gunshot that was the basis for his attempted murder conviction. [*Id.*].

The Government countered that Nelson was convicted of a drug trafficking offense in addition to the possession offense (F0203021). [*Id*. at 12]. Moreover, controlling precedent held that Nelson's conviction as a principal under Florida law in F105949A had no effect on that conviction's qualification as an ACCA predicate. [*Id.* at 13]. The Government stated that "Mr. Nelson may subjectively feel as though his conduct in those cases perhaps doesn't meet the statutory threshold, but as a legal matter, they certainly do." [*Id*. at 13]. Attorney Suri stated he could not support Nelson's objection as he believed the felony convictions qualified as predicate offenses. [*Id.*]. The Court agreed with the Government that Nelson qualified for sentencing under ACCA and imposed the 180-month mandatory minimum. [*Id.* at 14].

Towards the end of the hearing, the Court advised Nelson of his right to appeal his sentence and that any notice of appeal had to be filed within 14 days. [*Id.* at 16]. Attorney Suri asked the Court to appoint appellate counsel, noting his difference of opinion with Nelson on the ACCA enhancement, but the Court responded that counsel should continue the representation. [*Id*. at 16-17]. Judge Altonaga further stated that "Mr. Nelson can file his own notice of appeal, if he wants." [*Id.* at 17]. Judgment was entered on October 22, 2021 [CR ECF No. 129]. Nelson never filed a direct appeal.

<u>The § 2255 Motion</u>

On May 17, 2022, less than a year after the judgment against him became final, Nelson filed the present motion to vacate his sentence pursuant to 28 U.S.C. § 2255. [CV ECF No. 1]. Among other claims, Nelson argued that trial counsel was ineffective for failing to file a notice of

appeal despite Nelson's request to do so. [CV ECF No. 1-1 at 8]. He alleged that trial counsel told him "He had no appeal rights [sic] because he had waived them all away." [*Id.*]. The district court ordered an evidentiary hearing be held on the limited issue of whether Nelson's counsel rendered ineffective assistance by failing to file a notice of appeal. [CV ECF No. 10]. New counsel was appointed to represent Nelson at the evidentiary hearing. [CV ECF No. 12].

Evidentiary Hearing

I conducted an evidentiary hearing on March 2, 2023. [CV ECF No. 33]. Nelson testified on his behalf and the Government called trial counsel Arnaldo Suri. [CV ECF No. 34]. The Government introduced the sentencing transcript, the change of plea transcript, and a series of messages as Exhibits 1–3. Nelson introduced a sole exhibit, a series of emails dated October 12, 2021. [*Id.*].

Rodney Nelson's Testimony

Nelson testified that Attorney Suri represented him throughout the case, including sentencing. He acknowledged that he entered a guilty plea because he was in fact guilty. Before pleading guilty, Nelson asked Attorney Suri, however, to obtain a presentence investigation report ("PSI") when he learned his sentence would be enhanced under ACCA.

Although the PSI concluded that he had three predicate qualifying offenses, Nelson continued to question the propriety of the application of the ACCA enhancement. On October 12, 2021, a few days before the sentencing hearing, he emailed Attorney Suri asking him to "advise the government to prove that the alleged predicate is valid." [Petitioner's Exhibit 1]. Later that day, Nelson wrote to Attorney Suri stating that Suri had failed to properly investigate the three qualifying priors, and that he had made copies of all correspondence to present to the court should Attorney Suri fail to follow his instruction to object. Nelson added "if need be[,] file a continuance

for the court date so this matter can be resolved before my sentencing." [Petitioner's Exhibit 1]. Attorney Suri responded: "I am not filing an objection to the predicate since you agreed to it and agreed not to contest it," adding that contesting the enhancement could result in his plea being vacated, which in turn would revive the § 924(c) count and lead to trial.

Nelson acknowledged that Judge Altonaga informed him at the sentencing hearing of his right to appeal the sentence and that any notice of appeal had to be filed within 14 days. At the time, he did not know what an appeal was, what a notice of appeal contained, or where to send the notice.

Nelson testified that he saw Attorney Suri at the prison while Suri was there visiting other inmates. Nelson testified that when Attorney Suri came to say goodbye and wish him luck, he asked Attorney Suri to file an appeal on his behalf. He also asserted that he made this request within the allotted 14-day period. Attorney Suri did not advise him of his appellate rights, the appellate process, or his right to have appellate counsel appointed. He realized the notice of appeal was not filed after the 14-day period expired.

Trial Counsel Arnaldo Suri's Testimony

Attorney Suri testified, in sum, that immediately after sentencing, before Nelson was removed from the courtroom, he asked Nelson to let him know whether to file an appeal. Nelson "did not say a word back," and although he tried following up via email, he did not get a definite response from Nelson.

More specifically, during Attorney Suri's direct examination, the Government introduced Exhibit 3, a series of email messages Nelson sent to Attorney Suri between October 26, 2021 and February 17, 2022 via CorrLinks. In Nelson's first message, dated October 26, six days after sentencing, Nelson told Attorney Suri he had failed to raise certain issues during the sentencing

6

hearing, including the ACCA matter and that Attorney Suri should "look at that." Attorney Suri responded in relevant part: "All I need to know from you is whether you want me to file a notice of appeal. The judge informed you that you must file the notice 14 days from October 20th, 2021." Attorney Suri also told Nelson that he could file a § 2255 motion if he believed that Attorney Suri had committed a legal mistake, adding "if you are right then your plea may be vacated and you will face your superseding indictment anew, which includes a § 924(c) count which was dismissed by the government as part of the current plea agreement." Attorney Suri added that if Nelson hired a private attorney, the attorney should contact him immediately.

Nelson responded the following day that the Government could revive none of the dismissed charges and that Attorney Suri appeared to be "working with" the Government, adding: "I will not come back with [you] as my lawyer[,] no disrespect." Attorney Suri only responded: "You need to let me know if you want me to file a notice of appeal." Nelson answered that he would not face a § 924(c) charge because the Government could not "come back with that." Once again, Attorney Suri only responded he needed to know whether to file a notice of appeal because the deadline was November 3. He asked Nelson to let him know by November 1, otherwise he would take that as a "no".

To this Nelson responded: "I'm getting my 2255 put together so I will let you know before Nov[ember] 1st." There was no further correspondence to Attorney Suri until November 6, when Nelson asked him to give his "stuff" to his wife, Patrice Moss. Nelson testified, however, that the prison went on lockdown due to the Covid-19 pandemic at the end of October into early November. The rest of the text messages, sent between November 30, 2021 and February 17, 2022 contain Nelson's thoughts about the predicate offenses but make no mention of an appeal. Attorney Suri did not respond to the remaining messages.

7

Notably, contrary to Nelson's statement that they met at the prison when Attorney Suri was seeing other prisoners, Attorney Suri testified that he never saw Nelson again after the sentencing hearing. He admitted he did not discuss Nelson's appellate rights with him after sentencing, other than in the email messages in Exhibit 3. He believed that their earlier discussion about the appellate waiver in the plea agreement and Judge Altonaga's instructions were sufficient. He did not file a notice of appeal because Nelson never gave him a definite answer. When asked why he was not sure whether Nelson wanted to file an appeal, Attorney Suri testified:

> Because he never told me he wanted to file an appeal. He didn't say anything at the sentencing when the judge even said to him you know can you file your own. He didn't say anything. I asked him and he never indicated to me he wanted to file an appeal [] 2255 he did mention, he said to me I am working, as a matter of fact between sentencing and the time the appeal time expired, he did say to me I am working on my 2255 by November 1, I will let you know whether I want to also appeal or appeal. He said that. But he specifically mentioned 2255, never mentioned an appeal. And I kept on telling him, I mean, I don't know how many occasions, at least 2 or 3, I spoke to his wife, Ms. Moss, who I had spoken to throughout the trial of the pendency of the case not the trial, excuse me, and he never got back to me to say appeal. I would have filed a notice immediately.

## II.   Legal Analysis

To succeed on an ineffective-assistance claim, a defendant must show that (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A § 2255 movant can meet this test in two ways. *See Rios v. United States*, 783 F. App' x 886, 891 (11th Cir. 2019). First, he can show that counsel disregarded a specific instruction to file a notice of appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). Counsel's performance in these circumstances is *per se* deficient because "the decision to appeal rests with the defendant." *Id.* at 479. Moreover, prejudice is presumed when counsel's deficient

8

performance deprives a defendant of an appeal that he otherwise would have taken. *Garza v. Idaho*, 139 S. Ct. 738, 750 (2019).

Second, a § 2255 movant can show that counsel failed to adequately consult with him about an appeal and that, had he received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal. *Flores-Ortega*, 528 U.S. at 478. In *Thompson v. United States*, the Eleventh Circuit explained that "adequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, and making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal." 504 F.3d 1203, 1206 (11th Cir. 2007).

To prove deficient performance under this route, the movant must show that counsel had a "constitutionally imposed duty to consult." *Flores-Ortega*, 528 U.S. at 480. Counsel has a duty to consult when (1) a rational defendant would want to appeal; or (2) the particular defendant reasonably demonstrated an interest in appealing. *Thompson*, 504 F.3d at 1207. In making this determination, courts must take into account all the information counsel knew or should have known. *Flores-Ortega*, 528 U.S. at 480. While there is no "bright-line rule" that counsel must always consult with a defendant regarding an appeal, the Supreme Court has recognized that counsel will have a duty to consult "in the vast majority of cases." *Id.* at 480–81. If "counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken," then the court must apply a "presumption of prejudice regardless of how many appellate claims were foreclosed." *Garza v. Idaho*, 139 S. Ct. 738, 747 (2019) (quoting *Flores-Ortega*, 528 U.S. at 484).

Here, the parties disagree regarding whether Nelson instructed counsel to file an appeal. Nelson claimed he instructed Attorney Suri to file a notice of appeal when Attorney Suri came by

9

to "wish him luck" while visiting other inmates at the prison. Attorney Suri directly contradicted this testimony, stating he did not visit Nelson in the prison after the sentencing hearing and that neither Nelson nor Nelson's wife, Patricia Moss, asked him to file a notice of appeal. Attorney Suri testified he asked Nelson and his wife multiple times whether he should file a notice of appeal, but neither gave him a definite response. Indeed, the CorrLinks messages sent after the sentencing hearing show that Nelson never instructed Attorney Suri to file a notice of appeal despite Suri's multiple questions and his warning that the notice of appeal had to be filed before November 3, 2021. When Attorney Suri admonished that if he did not hear from Nelson before November 1, he would presume Nelson did not want to appeal, Nelson responded: "I'm getting my 2255 put together so I will let you know before Nov[ember] 1st." Nelson, however, did not respond by that deadline. Nelson's testimony that communication became difficult around this time due to the Covid-19 pandemic is noteworthy, but still fails to show that Nelson made an express request to file a notice of appeal and that Attorney Suri disregarded that request.

Based on this record, the Court finds Attorney Suri's testimony that Nelson did not instruct him to file a notice of appeal more credible than Nelson's contrary testimony. *See Rios*, 783 F. App' x. at 892 (holding magistrate judge's finding that neither defendant nor defendant's family members did not instruct attorney to file notice of appeal was not clearly erroneous). Nelson has therefore failed to show that counsel was ineffective by disregarding a specific instruction to file a notice of appeal. *See Roe v. Flores-Ortega*, 528 U.S. at 477.

Nevertheless, on this record, I conclude that Attorney Suri's email messages to Nelson after sentencing demonstrate a failure to adequately consult with Nelson about an appeal. *See id.* at 478 (explaining that in cases where defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken a court must first inquire into whether counsel consulted with the client

about an appeal). Nelson consistently argued that he did not qualify for the ACCA sentencing enhancement. Testimony introduced at the evidentiary hearing, the sentencing transcript, and the CorrLinks messages, all show that Nelson was troubled about the legality of his sentence. Nelson consistently objected to the Government's recommendation and the sentence ultimately imposed by the court. All this reasonably suggests that Nelson would have wanted to learn about his appellate rights, especially after the court informed Nelson at the sentencing hearing about his right to appeal the sentence. Attorney Suri had a constitutionally imposed duty to consult with Nelson because "the particular defendant [in this case] reasonably demonstrated an interest in appealing." *Id.* at 480.

By his own admission, Attorney Suri did not meet with Nelson after the sentencing hearing to discuss Nelson's appellate rights. He believed the district court's instructions regarding Nelson's right to appeal and an earlier discussion about the appellate waiver in the plea agreement sufficed. And, perhaps in some instances, that may have been sufficient. Here, however, the cryptic messaging between Nelson and Attorney Suri shows that they seem to be speaking at cross purposes. The CorrLinks messages show that Attorney Suri repeatedly asked Nelson if he wanted to proceed with the appeal, but they do not reflect a meaningful discussion regarding Nelson's appellate rights, including any discussion on how Nelson could file his own appeal as the district judge had suggested at sentencing. Nor do they show that Attorney Suri adequately advised Nelson about the advantages and disadvantages of taking an appeal. Other than asking Nelson via CorrLinks if he should file a notice of appeal, and warning Nelson that the notice had to be filed by November 3, Attorney Suri simply stated: "With regard to any alleged legal mistake you think I committed you can file a 2255 motion. If you are right then your plea may be vacated and you will face your superseding indictment anew . . . ." Gov't. Exh. 3.

11

In *Thompson*, the Eleventh Circuit explained that counsel's five-minute consultation with the client regarding his right to appeal was inadequate given the circumstances of the case. 504 F.3d at 1207. There, the defendant's attorney had simply reiterated the Court's instruction that the client had a right to appeal and opined that an appeal would be unsuccessful. *Id*. The court reasoned:

> Simply asserting the view that an appeal would not be successful does not constitute "consultation" in any meaningful sense. No information was provided to [the client] from which he could have intelligently and knowingly either asserted or waived his right to an appeal. This record is clear that no reasonable effort was made to discover [the client]'s informed wishes regarding an appeal.

*Id.* Here too, Attorney Suri's repeated questions whether he should file a notice of appeal do not constitute consultation in any meaningful sense. Attorney Suri provided no other information in his messages regarding an appeal. Instead, Attorney Suri only messaged Nelson about the implications of a successful § 2255 motion.

Similarly, in *Rios*, the Eleventh Circuit held that the defendant's attorney failed to adequately consult with his client because "while [counsel] may have believed that an appeal would be a waste of time, he still had a duty to consult with his obviously distressed client about an appeal because 'the decision to appeal rests with the defendant;" 504 F.3d 1203, 1206 (11th Cir. 2007) (quoting *Flores-Ortega*, 528 U.S. at 479). In this case too, the decision to appeal rested with Nelson. Though Attorney Suri reasonably believed that challenging Nelson's plea agreement could result in a lengthier sentence and that Nelson waived many rights by entering the plea agreement, a review of the plea agreement shows Nelson did not waive all appellate rights. [2] And as discussed above, regardless of the merits of an appeal, Attorney Suri knew or should have known that Nelson was interested in appealing his sentence. Thus, in light of Nelson's continuing

---

[2] The appeal waiver in Nelson's plea agreement allows Nelson to appeal if his sentence exceeds the maximum permitted by statute or exceeds the sentencing range set. *See* [CR ECF No. 96 at ¶ 13].

objections to the sentencing enhancement, the exchange between the court and counsel at the end of the sentencing hearing, and Nelson's emails post-sentencing in which he reiterated his concerns, Attorney Suri should have provided information to Nelson regarding how to appeal, if he chose to file the appeal himself, and explained the appellate process and how an appeal would differ from a §2255 motion, such that Nelson could make a knowing and intelligent decision. Because "[s]imply asserting the view than an appeal would not be successful does not constitute 'consultation' in any meaningful sense," *Thompson*, 504 F.3d at 1207, Attorney Suri's emails cannot constitute consultation.

In conclusion, given these facts, the Court finds that Nelson demonstrated interest in an appeal; that Attorney Suri failed to adequately consult with Nelson about his appellate rights; and that the Court must presume that Nelson was prejudiced even if his appeal would have been meritless. *See Thompson*, 504 F.3d at 1207–08 ("Because a direct appeal of a federal conviction is a matter of right, we determine whether a defendant has shown that there is a reasonable probability that he would have appealed without regard to the putative merits of such an appeal.") (cleaned up); *see also Garza*, 139 S. Ct. at 747 ("[W]hen deficient counsel causes the loss of an entire proceeding, it will not bend the presumption-of-prejudice rule simply because a particular defendant seems to have had poor prospects .... Instead, we reaffirm that, 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal,' with no need for a 'further showing' of his claims' merit[.]") (quoting *Flores-Ortega*, 528 U.S. at 480).

### III.     Recommendations

For the foregoing reasons it is **RECOMMENDED** that:

1) Movant's Motion to Vacate [ECF No. 1] be **GRANTED** solely as to his claim that counsel was ineffective to the extent that he may file a belated appeal in his criminal case;

2) The district court judge enter an amended judgment of conviction from which appeal may be taken so that Movant may file a Notice of Appeal.

Objections to this report may be filed with the district judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar movant from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**SIGNED** this 10th of March 2023.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **Chief United States District Judge Cecilia M. Altonaga;**

   **All Counsel of Record**